**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNDERWOOD FINANCIAL, LTD.** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:23-CV-00825-L** |
| | § | |
| **AMCO INSURANCE COMPANY,** | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant AMCO Insurance Company's Opposed Motion to Compel Appraisal (Doc. 80) ("Motion to Compel Appraisal"), filed June 25, 2026; and AMCO Insurance Company's Opposed Motion to Stay Pretrial Deadlines (Doc. 84) ("Motion to Stay"), filed July 8, 2026. After careful consideration of the Motions, legal briefing, appendixes, record, and applicable law, and for the reasons set forth herein, the court **grants** the Motion to Compel Appraisal and **denies as moot** the Motion to Stay.

## I. Factual and Procedural Background

This is a first-party insurance coverage dispute. Plaintiff Underwood Financial, Ltd. ("Plaintiff" or "Underwood") owns and manages two commercial buildings in Richardson, Texas (the "Property"). Am. Compl. ¶ 7 (Doc. 5). AMCO Insurance Company, part of the Nationwide family of companies ("Defendant" or "Nationwide"), insured the Property under two consecutive policies in effect from January 31, 2021, to January 31, 2023 (the "2021 Policy" and "2022 Policy"). *See* Def.'s App. at Ex. A (2021 Policy) (Doc. 82-1 at 1-95); *id.* at Ex. B (2022 Policy)

(Doc. 82-1 at 96-191).[1] The 2021 and 2022 Policies both covered "direct physical loss of or damage to" the Property caused by or resulting from a covered cause of loss, such as "Windstorm" and "Hail." *Id.* at Ex. A (Doc. 82-1 at 18-19, 23); *id.* at Ex. B (Doc. 82-1 at 111-13, 116).

Following an April 23, 2021 hailstorm, Plaintiff filed a claim under the 2021 Policy for hail damage to the Property ("2021 Hail Claim"), and, after inspection, Defendant paid $41,573.22 for HVAC damage only. Pl.'s App. at Ex. E (Doc. 85 at 56-60). Following a June 1, 2022 rainstorm, Plaintiff filed a claim under the 2022 Policy for, among other things, roof damage and interior flooding ("2022 Wind and Water Claim"). *Id.* at Ex. F (Doc. 85 at 79-81). Defendant denied the claim, blaming pre-existing conditions including ponding and wear and tear. *Id.* Thereafter, Plaintiff sought to reopen the 2022 Wind and Water Claim and the 2021 Hail Claim (expanded to include hail damage to the roof at the Property and not just to the HVAC equipment). Def.'s Summ. J. App. at Ex. A-18 (Doc. 40-1 at 455-56). Defendant reopened the claims, reinspected the Property, and on or about October 4, 2022, denied coverage for the reopened 2021 Hail Claim, attributing the loss not only to wear and tear but, for the first time, to a prior hailstorm in April 2017. *Id.* at Ex. A-25 (Doc. 41 at 257-58). On or about November 8, 2022, Defendant denied coverage for the reopened 2022 Wind and Water Claim, attributing the loss to "wind-driven rain, ponding of rainwater on the roofing, inadequate positive roof slope for drainage, wear and tear, and deterioration of the roofing[,]" for which there was no coverage under the 2022 Policy. *Id.* at Ex. A-26 (Doc. 41 at 270-72).

[1] Citations to the record and briefs refer to the CM/ECF page numbers at the top of the page, rather than the parties' pagination at the bottom. "Def.'s App." refers to the "Appendix to AMCO's Brief in Support of its Opposed Motion to Compel Appraisal" (Doc. 82-1) and "Pl.'s App." refers to "Underwood Financial, Ltd.'s Appendix in Support of its Response to Defendant's Motion to Compel Appraisal" (Doc. 85-1).

On April 19, 2023, Plaintiff filed this civil action and in the First Amended Complaint (Doc. 5), the live pleading, asserts claims for breach of contract[2]; violations of Chapter 541 of the Texas Insurance Code; violations of various provisions of the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63; and breach of the common law duty of good faith and fair dealing. Am. Compl. (Counts One through Four). Plaintiff seeks actual, consequential, treble, and exemplary damages, damages for mental anguish, and attorney's fees. *Id.* (Prayer).

On June 14, 2023, the court set this matter for trial on its four-week docket beginning August 5, 2024. Sch. Order ¶ 1 (Doc. 11). On January 22, 2024, the parties participated in mediation with John DeGroote. The ADR Summary Form (Doc. 22), signed by the mediator, states: "Parties were unable to reach settlement."

On February 16, 2024, the parties filed an Agreed Motion to Modify Scheduling Order (Doc. 24), notifying the court that Plaintiff's representative Courtney Underwood's deposition could not be completed because of her high-risk pregnancy. The court granted the motion and reset the trial to its four-week docket beginning November 4, 2024. First Am. Sch. Order ¶ 1 (Doc. 25). Subsequently, after defense counsel notified the court of a conflicting trial setting (Doc. 65), the court reset the trial to its four-week docket beginning July 7, 2025. Sec. Am. Sch. Order ¶ 1 (Doc. 67). On September 24, 2024, the court issued a Third Amended Scheduling Order (Doc. 68) to remove expired deadlines.

---

[2] Specifically, Plaintiff alleges breach of contract with regard to Defendant's denial of the reopened 2021 Hail Claim (pertaining to an April 2021 hailstorm that Plaintiff alleges damaged not just the HVAC units on the roof but the roof itself); and Defendant's denial of the reopened 2022 Wind and Water Claim (pertaining to a 2022 wind and rainstorm that Plaintiff alleges damaged the Property's roof and flooded certain tenant suites). *See generally* Am. Compl. ¶¶ 22-27 (Doc. 5).

On June 17, 2024, Defendant filed its Motion to Strike the Opinions and Testimony of Plaintiff's Retained Testifying Expert Scott Jetton ("Motion to Strike") (Doc. 35) and its Motion for Summary Judgment (Doc. 38), and Plaintiff filed its Motion to Exclude Expert Testimony and Brief in Support (Doc. 42).

In light of the pending dispositive motions, the parties filed a Joint Motion for Continuance (Doc. 69) and requested that the court modify the Third Amended Scheduling Order. The court granted the motion and reset this matter for trial on its four-week docket beginning April 6, 2026. Fourth Am. Sch. Order ¶ 1 (Doc. 70). Subsequently, the parties sought another continuance, noting that "[a]ssuming an imminent ruling on the pending dispositive motions, [they] will not have time to conduct [the depositions permitted by the Magistrate Judge] and prepare for pre-trial disclosures." Jt. Mot. Continue (Doc. 71 at 1). The court granted the motion and reset this matter for trial on its four-week docket beginning September 8, 2026. Fifth Am. Sch. Order ¶ 1 (Doc. 72).

On March 19, 2026, the court (i) denied Defendant's Motion to Strike and Motion for Summary Judgment; (ii) denied without prejudice Plaintiff's Motion to Exclude Expert Testimony; and (iii) "strongly encourage[d] the parties to consider resolution of the remaining claims" making available a magistrate judge to conduct a settlement conference. Mem. Op. (Doc. 73 at 36-37).

On March 25, 2026, Plaintiff's counsel wrote Defendant that "Plaintiff wants to accept the Court's invitation to use a Magistrate Judge to mediate this case. Please let me know if Defendant is on board." Pl.'s App. at Ex. A (Decl. of Andrés Correa ¶ 5) (Doc. 85-1 at 7); *id.* at Ex. S (E-mail dated March 25, 2026, from A. Correa to R. Wall re: mediation with Magistrate Judge) (Doc. 85-1 at 1594). On April 20, 2026, the parties engaged in a settlement conference with Magistrate Judge Rutherford, but they were unable to resolve their dispute. Minute Entry (Doc. 76). After that mediation failed, on May 14, 2026, Plaintiff's counsel once again tried to engage in a "discussion

regarding settlement," inviting a call with Defendant's counsel. Pl.'s App. at Ex. A (Decl. of Andrés Correa ¶ 5) (Doc. 85-1 at 7); *id.* at Ex. R (E-mail dated May 14, 2026, from A. Correa to R. Wall re: settlement negotiations) (Doc. 85-1 at 1591). On Thursday, May 21, 2026, Plaintiff's counsel and Defendant's counsel spoke by phone. Defendant's counsel expressed appreciation for the initiative and stated he was "100% in agreement we should keep the settlement conversation going." *Id.* at Ex. A (Decl. of Andrés Correa ¶ 6) (Doc. 85-1 at 7).

One week later, on May 28, 2026, Defendant invoked appraisal under the 2021 and 2022 Policies and designated its appraiser. Def.'s App. at Ex. C (Doc. 82-1 at 192-94). On June 15, 2026, Plaintiff declined Defendant's appraisal request, asserting that the request "is untimely, procedurally inappropriate in light of the active litigation posture, unsupported by the policy language, and rendered futile by the physical changes to the Property of which [Defendant] has long been aware." *Id.* at Ex. D (Doc. 82-1 at 195-99).

On June 25, 2026, Defendant moved to compel appraisal and, on July 8, 2026, it moved to stay all remaining pretrial deadlines and the trial setting for sixty days following either the court's ruling on its Motion to Compel Appraisal, or the completion of appraisal, if so ordered. It argues that appraisal is required under the 2021 and 2022 Policies, and that a stay would conserve both the parties' and judicial resources. Plaintiff opposes both Motions.

## II. Applicable Law

Texas insurance policies frequently include provisions requiring or allowing appraisal to resolve disputes about loss amounts. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888-89 (Tex. 2009). "An appraisal clause 'binds the parties to have the extent or amount of the loss determined in a particular way.'" *Id.* at 895 (quoting *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002)). An appraiser must "decide the amount of loss," not construe the policy or

decide whether the insurer should pay. *Id.* at 890 (internal quotation marks omitted). "[U]nless the 'amount of loss' will never be needed . . . appraisals should generally go forward without preemptive intervention by the courts." *Id.* at 895.

Texas courts interpret insurance policies pursuant to the same rules of construction that apply to other contracts. *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Policy No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021). "Each insurance policy must be interpreted according to its own specific wording, provisions, and coverages." *Progressive Cnty. Mut. Ins. v. Saldivar*, 712 S.W.3d 691, 694 (Tex. App.—Houston [14th Dist.] 2025, no pet.). The court's primary goal is to ascertain the intent of the parties as expressed in the insurance policy. *Kelley-Coppedge, Inc. v. Highlands Ins.*, 980 S.W.2d 462, 464 (Tex. 1998). The court determines the parties' intent "by looking only to the four corners of the policy to see what is actually stated" in such policy. *Certain Underwriters at Lloyd's, London v. Henry Vogt Mach. Co.*, 712 S.W.3d 909, 927 (Tex. App.—Houston [14th Dist.] 2025, no pet.). The court gives the terms of the policy their "common, ordinary meaning." *Anadarko Petrol. Corp. v. Houston Cas. Co.*, 573 S.W.3d 187, 193 (Tex. 2019).

## III. Analysis

The 2021 Policy and 2022 Policy include identical appraisal provisions and Texas Changes Endorsements, which read as follows:

> **APPRAISAL**
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

a. Pay its chosen appraiser; and
b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

a. You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and;
b. We will still retain our right to deny the claim.

***

**CHANGES**

1. This policy contains all the agreements between you and us concerning the insurance afforded.
2. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

2021 Policy, Def.'s App. at Ex. A (Doc. 82-1 at 51); 2022 Policy, Def.'s App. at Ex. B (Doc. 82-1 at 144).

Defendant "seeks an Order compelling Plaintiff to comply with its contractual obligation to allow for appraisal of the amount of loss in Plaintiff's property damage insurance claims." Def.'s Br. in Support of Mot. to Compel (Doc. 81 at 5). Defendant also requests that the court stay all pretrial deadlines and the trial date for sixty days following "the completion of appraisal if so ordered." Def.'s Mot. to Stay (Doc. 84 at 3).

In response, Plaintiff contends that: (1) the appraisal clause has not been triggered "because this is a coverage dispute, not an amount-of-loss dispute"; (2) Defendant "waived its right to appraisal," causing Plaintiff substantial prejudice; and (3) "appraisal would be futile in this case, because it would not resolve the case." Pl.'s Resp. Br. (Doc. 85 at 13-14, 22). Plaintiff also asserts that Defendant has not met its burden of showing that a stay is warranted because, among other things, "[a]ppraisal cannot resolve this case because it fixes only the amount of loss, not coverage, liability, or extracontractual claims"; and "[a] stay of all deadlines is disproportionate; at most, any

relief should be narrow." Pl.'s Resp. Br. (Doc. 87 at 8, 10). Plaintiff urges the court to "preserve the September 8, 2026 trial setting and all associated pretrial deadlines." *Id.* (Doc. 87 at 14).

### A. Applicability of Appraisal Clause

As a threshold matter, Plaintiff argues that the appraisal clause has not been triggered "because this is a coverage dispute, not an amount-of-loss dispute." Pl.'s Resp. Br. (Doc. 85 at 13). Plaintiff maintains that appraisal only applies "when the insurer and insured agree that a covered loss exists but disagree about how much that loss is worth. It does not apply when the insurer's position is that no covered loss exists at all." *Id.* According to Plaintiff, Defendant "has *never* conceded that any covered peril caused the damage to the roofs at issue. From the inception of this claim through the present day, [its] unequivocal position has been that it owes [Plaintiff] *nothing* for roof damage." *Id.* (original emphasis).

The court disagrees with Plaintiff's contentions that the 2021 and 2022 Policies require appraisal only when there is a "quantum dispute," and that, because Defendant maintains the loss is not covered, it cannot invoke appraisal. The Supreme Court of Texas has held that appraisal is proper under several circumstances involving disagreements regarding coverage:

> [W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong. And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Johnson*, 290 S.W.3d at 894 (footnotes omitted); *see In re Germania Farm Mut. Ins. Ass'n*, 2026 WL 1628701, at *4 (Tex. App.—Corpus Christi-Edinburg June 5, 2026, orig. proceeding [mand. granted) (concluding that, under *Johnson*, insured's denial of claim does not "preclude its request for appraisal."); *In re Am. Zurich Ins.*, 2025 WL 3236300, at *7 (Tex. App.—Houston [1st Dist.]

Nov. 20, 2025, orig. proceeding) (mem. op.) (stating that "even if Zurich has denied coverage, appraisal may still be requested"); *In re Liberty Ins.*, 496 S.W.3d 229, 235 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding [mand. denied]) (concluding that the denial of a homeowner's claim for damages is not inconsistent with appraisal).[3]

Based on this controlling law, the court concludes that the appraisal provision in the 2021 and 2022 Policies may not be disregarded simply because of coverage or causation issues about which storm caused the roof damage, or whether damage was based on wear and tear and preexisting conditions, rather than a covered cause of loss. "Because [the court] cannot say that 'the amount of loss will never be needed,' [it] cannot agree with [Plaintiff] that 'preemptive intervention by the courts' is warranted." *In re ACE Am. Ins. Co.*, 734 S.W.3d 887, 894 (Tex. 2026) (quoting *Johnson*, 290 S.W.3d at 895) (internal quotation marks omitted) (brackets added).

**B. The Nonwaiver Provision**

Plaintiff asserts that Defendant waived the right to appraisal and it suffered prejudice as a result. *See* Pl.'s Resp. Br. (Doc. 85 at 14-22). As a preliminary matter, however, the 2021 and 2022 Policies both contain a nonwaiver provision, which provides:

> 1. This policy contains all the agreements between you and us concerning the insurance afforded.
> 2. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

2021 Policy, Def.'s App. at Ex. A (Doc. 82-1 at 51); 2022 Policy, Def.'s App. at Ex. B (Doc. 82-1 at 144).

[3] In addition, as noted in *Johnson*, separating loss due to a covered event from a property's preexisting condition is a task for the appraisers. *Johnson*, 290 S.W.3d at 892-93 (citation omitted). As previously explained, on or about November 8, 2022, Defendant denied coverage for the reopened 2022 Wind and Water Claim, attributing the loss to "wind-driven rain, ponding of rainwater on the roofing, inadequate positive roof slope for drainage, wear and tear, and deterioration of the roofing[,]" for which there was no coverage under the 2022 Policy. Def.'s Summ. J. App. at Ex. A-26 (Doc. 41 at 270-72).

"Given Texas's strong public policy favoring freedom of contract, there can be no doubt that, as a general proposition, nonwaiver provisions are binding and enforceable." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017). "[N]onwaiver provisions may themselves be waived[,]" depending on the circumstances of the case. *Rosanky v. Nationwide Assurance Co.*, 2025 WL 657965, at *3 (W.D. Tex. Jan. 23, 2025) (citing *Hobby Lobby Stores, Inc. v. Standard Renewable Energy, LP*, 2016 WL 4247969, at *5 (Tex. App.—Fort Worth Aug. 11, 2016, pet. denied)); *see also Breof BNK Tex., L.P. v. D.H. Hill Advisors, Inc.*, 370 S.W.3d 58, 66 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Although non-waiver clauses may themselves be waived, they are generally considered valid and enforceable) (citation omitted). "To find waiver of a nonwaiver provision, 'there must, at a minimum, be some act inconsistent with its terms.'" *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 503 (5th Cir. 2018) (quoting *Shields*, 526 S.W.3d at 474).

Waiver is ordinarily a question of fact, but when the facts are admitted or clearly established, it becomes a question of law. *In re Liberty Ins. Corp.*, 496 S.W.3d 229, 233 (Tex. App.—Houston [1st Dist.] 2016, pet. denied.) (orig. proceeding). The Texas Supreme Court has repeatedly held that waiver requires intent. *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006); *In re Universal Underwriters*, 345 S.W.3d at 407. Defendant must, by its conduct, manifest clear intent to waive the nonwaiver provision. Otherwise, the nonwaiver provision is facially dispositive. *Shields*, 526 S.W.3d at 481.

Plaintiff's brief is devoid of any argument on the issue of waiver of the nonwaiver provision. Instead, Plaintiff's sole contention against enforcement of the Policies' respective nonwaiver provisions is that they are not, in fact, nonwaiver provisions. *See* Pl.'s Resp. Br. (Doc. 85 at 17). In support, Plaintiff cites the *In re Allstate* case, arguing "nearly identical language" was

found in that case to not constitute a nonwaiver provision. *Id.* (citing *In re Allstate Vehicle & Property Insurance Co.*, 549 S.W.3d 881, 894 (Tex. App.—Fort Worth 2018, orig. proceeding)).

As Defendant correctly notes, however, "the court in *In re Allstate* held the opposite." Def.'s Reply (Doc. 86 at 5). The relevant provisions are as follows:

> *In re Allstate* policy:
>
> Coverage Changes
> When we broaden coverage during the policy period without charge, you have the new features if you have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

*In re Allstate*, 549 S.W.3d at 894.

The 2021 and 2022 Policies provide, in pertinent part: "This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy." 2021 Policy, Def.'s App. at Ex. A (Doc. 82-1 at 51); 2022 Policy, Def.'s App. at Ex. B (Doc. 82-1 at 144).

The court in *In re Allstate* found that the provision in the policy was "simply not a nonwaiver clause" because "[i]t does not provide that policy terms can be waived only by endorsement." *In re Allstate*, 549 S.W.3d at 894. Here, however, the nonwaiver provision in the 2021 and 2022 Policies contains the *exact* language the *In re Allstate* court found to be missing. The *In re Allstate* provision that Plaintiff characterizes as "nearly identical" does not even include the word "waiver"; the provision in the 2021 and 2022 Policies states unequivocally that the policy's terms "can be waived only by endorsement." 2021 Policy, Def.'s App. at Ex. A (Doc. 82-1 at 51); 2022 Policy, Def.'s App. at Ex. B (Doc. 82-1 at 144).

Further, the nonwaiver provision in the 2021 and 2022 Policies is identical, or nearly identical, to the nonwaiver clauses that Texas courts have found to be enforceable in the context of appraisal. *See, e.g., In re Am. Nat'l Prop. & Cas. Co.*, 582 S.W.3d 400, 404-406 (Tex. App.—San Antonio 2018, orig. proceeding) (identical language); *In re United Servs. Auto. Ass'n*, 2020

Tex. App. 10203, at *6-7 (Tex. App.—Austin Dec. 23, 2020) (similar language). Further, numerous federal courts in Texas, applying Texas law, have enforced identical nonwaiver provisions. *See World Covenant Ministries v. Central Mut. Ins. Co.*, 2021 WL 12288329, at *3 (N.D. Tex. Nov. 23, 2021) (O'Connor, J.) (finding identical nonwaiver provision enforceable and concluding that insured opposing appraisal had not caried its burden to show that the carrier-defendant had "waived the nonwaiver provision, let alone that [the carrier] waived its right to appraisal."); *Rosanky*, 2025 WL 657965, at *3 (rejecting an insured's argument of waiver of appraisal, noting the policy's nonwaiver clause, and observing that the carrier would need to "by its conduct, manifest clear intent to waive the nonwaiver provision. Otherwise, the nonwaiver provision is facially dispositive.") (citing *Shields*, 526 S.W. 3d at 481). Other district courts have held similarly. *See GuideOne Mut. Ins. Co. v. First Baptist Church of Brownfield*, 495 F. Supp. 3d 428, 441 (N.D. Tex. 2020) (Hendrix, J.); *Rogers v. Nationwide Gen. Ins. Co.*, 2018 WL 3840940, at *5 (E.D. Tex. Aug. 13, 2018).

The Policies provide a specific method for obtaining a waiver—an endorsement issued by Defendant. The record bears no evidence that Defendant issued such an endorsement, and no party claims otherwise. Further, as previously discussed, Plaintiff makes no argument that Defendant waived *the nonwaiver provision*. By failing to argue or address a waiver of the nonwaiver provision, Plaintiff does not establish waiver, and the parties are bound by the terms of the Policies. Defendant, therefore, maintains its right to compel appraisal.

**C. Waiver of Right to Seek Appraisal and Prejudice to the Insured**

Even were the court to conclude that Defendant (i) waived the nonwaiver clause (which Plaintiff does not argue), and (ii) waived its right to seek an appraisal based on delay (*see* Pl.'s Resp. Br., Doc. 85 at 14-20), Plaintiff is still required to show that it suffered prejudice as a result

of the delay. *In re Universal Underwriters*, 345 S.W.3d at 411; *see also In re Ooida Risk Retention Grp., Inc.*, 475 S.W.3d 905, 912 (Tex. App.—Fort Worth 2015, orig. proceeding) ("The prejudice required, however, is prejudice following impasse and prior to invocation of the appraisal process, i.e., prejudice caused by the insurer's unreasonable delay in invoking the process."). Prejudice arises when the party demonstrates harm to its legal rights or financial position. *In re Universal Underwriters*, 345 S.W.3d at 411. "If the insured has suffered no prejudice due to delay, it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation." *Id*. The Texas Supreme Court has held that

> it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that an impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.

*Id.* at 412.

Plaintiff contends that the prejudice it suffered because of Defendant's delay is "severe and multi-faceted." Pl.'s Resp. Br. (Doc. 85 at 20). In support, Plaintiff asserts that "[b]oth roofs, the very subject matter of any appraisal, have been altered," and that its "litigation investment compounds this prejudice." *Id.* (Doc. 85 at 20-21). With respect to its litigation investment, Plaintiff explains that it "has taken and defended seven depositions, worked with fourteen tenants in response to [Defendant's] subpoenas, retained and worked extensively with its damages expert, responded to [Defendant's] dispositive motions with comprehensive briefing and evidence, and prepared for the September 2026 trial setting." *Id.* (Doc. 85 at 22). Plaintiff also cites to the "additional expense" of the appraisal process. *Id.* (Doc. 85 at 20-21).

The prejudice described by Plaintiff does not meet the standards set by the applicable caselaw. First, Plaintiff fails to explain how any prejudice resulting from its own roof repairs in

2022 and 2024 is attributable to a delay by Defendant in invoking appraisal.[4] Second, insofar as Plaintiff asserts a broad claim of prejudice arising from litigating this civil action, arguments of prejudice based on court costs, expert costs, litigation expenses, and attorney's fees, "are insufficient to establish prejudice." *In re Germania Farm Mut. Ins. Ass'n*, 2026 WL 1628701, at *7 (citing *In re Universal Underwriters*, 345 S.W.3d at 412). In addition, insofar as Plaintiff relies on the costs of appraisal to show prejudice, the court notes that Plaintiff contractually agreed to pay its share of the costs of appraisal by virtue of the insurance policy at issue. *See In re State Farm Lloyds*, 2025 WL 3670486, at *4 (Tex. App.—Dallas Dec. 17, 2025, orig. proceeding) (mem. op.) (concluding that when appraisal is available to either party, the litigation expenses identified by real parties generally do not constitute prejudice).

Finally, Plaintiff asserts that, "setting aside waiver and prejudice, appraisal would be futile in this case, because it would not resolve the case." Pl.'s Resp. Br. (Doc. 85 at 22) ("An appraisal award would not resolve this case because Underwood's claims include breach of contract, bad faith, violations of Chapter 541 of the Texas Insurance Code, and DTPA claims. Underwood would be entitled to attorney's fees, if successful, and the extracontractual damages—which constitute a substantial portion of Underwood's claims—cannot be determined by appraisal."). The court is not persuaded. The Texas Supreme Court has explained that "in most cases appraisal can be

---

[4] To the extent Plaintiff suggests that appraisal would be futile because the Property's two roofs have been altered, the undersigned agrees with Defendant that this argument:

> ignores the extensive documentary history available to the appraisers—the same evidence Plaintiff itself seeks to present to the jury to make those same amount-of-loss determinations. Plaintiff cites no case saying that replaced roofs cannot be appraised. The appraisers can inspect the current roofs to determine whether they constitute a reasonable cost of repair with comparable material and quality, or "merely a temporary emergency repair" as asserted by Plaintiff. The appraisers can also review the invoices, documentation of repairs, documentation of prior leaks and prior repairs, expert reports, and <u>hundreds</u> of photos of the property available from prior to the TPO roof replacements, just as Plaintiff seeks to present that same evidence to the jury to make amount-of loss determinations.

Def.'s Reply (Doc. 86 at 10) (original emphasis).

structured in a way that decides the amount of loss without deciding any liability questions" and "even if an appraisal award is flawed, that can be easily remedied by disregarding it later" at trial. *Johnson*, 290 S.W.3d at 894-95; *see also In re Pub. Serv. Mut. Ins. Co.*, 2013 WL 692441, at *4-5 (Tex. App.—Austin Feb. 21, 2013, orig. proceeding [mand. denied]) (enforcing appraisal provision in a dispute that centered on whether a roof needed repairs due to age, a covered windstorm, or another windstorm that predated coverage).

Finally, if appraisal of the amount of loss will still require litigation of coverage questions and extra contractual claims, as Plaintiff maintains (*see* Pl.'s Resp. Br., Doc. 85 at 22-23), then claims of prejudice arising from preparing to litigate those same claims are undermined. Otherwise stated, Plaintiff would have incurred those costs regardless. *See In re GuideOne Mut. Ins. Co.*, 2013 WL 257371, at *2 (Tex. App.—Beaumont Jan. 24, 2013, orig. proceeding) (per curiam) (mem. op.) ("The expenses First Baptist incurred developing its case included approximately $10,000 in expert fees for accounting services and over $100,000 in attorney fees. Nevertheless, the mandamus record does not establish that these expenses would not have been incurred if GuideOne had moved for appraisal earlier.").

**D. The Propriety of a Stay Pending Appraisal**

Defendant moves to stay all proceedings and continue the trial setting for a period of sixty days following either the court's ruling on its Motion to Compel Appraisal or the completion of appraisal, if so ordered. "While [a] trial court has no discretion to deny the appraisal, the court does have some discretion as to the timing of the appraisal." *In re Allstate*, 85 S.W.3d at 196. In addition, the court has inherent authority to manage its docket to ensure "the orderly and expeditious disposition of cases" pending before it. *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (citation omitted). Otherwise stated, district courts must have the power to control

their dockets by holding litigants to a schedule. *Cf. Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case.") (citation omitted). The record in this case makes clear that this dispute is primarily about coverage but that loss valuation issues may arise. Under these circumstances, in the interest of judicial efficiency, the court will vacate the Fifth Amended Scheduling Order and trial setting, and it will issue an amended Scheduling Order that accommodates the stated need for appraisal but allows the parties to timely proceed on issues of coverage.

## IV. Conclusion

For these reasons, the court **grants** Defendant's Motion to Compel Appraisal (Doc. 80) and **denies as moot** Defendant's Motion to Stay (Doc. 84).[5] The court orders the parties to begin the appraisal process forthwith and diligently seek to complete it as quickly as possible. The court further **directs** the parties to file a joint notice thirty (30) days from the date of this Order, advising the court of the status of the appraisal. The appraisal process shall be completed no later than **October 4, 2026**. In the event the appraisal is not completed by this deadline, the parties must notify the court immediately in writing and establish good cause for the failure to complete the appraisal process in a timely fashion. Good cause cannot be established if the parties fail to show

[5] Defendant's *extraordinary* delay in seeking to invoke appraisal gives the court pause, and such delay is not cause for approbation. Plaintiff filed this civil action on April 19, 2023, after Defendant denied coverage in October and November of 2022, and again denied coverage in response to Plaintiff's pre-suit notice estimating damages totaling $3,380,475.49. Nevertheless, Defendant waited until May 28, 2026, to invoke appraisal, more than three years after Plaintiff filed this lawsuit, more than two years after a failed mediation in January 2024, more than two months after the court denied its motion for summary judgment, and a mere three months prior to the trial date of September 8, 2026. During this period, Defendant never once indicated to the court that it was seeking appraisal. While Texas law compels the court to grant Defendant's Motion to Compel Appraisal—especially in light of the nonwaiver provision in the Policies—Defendant should not mistake the court's decision as condoning what appears to be nothing but a strategic use of the appraisal provision to seek further delay of this matter and Plaintiff's potential recovery.

they exercised diligence. Any further unnecessary delay in the appraisal process will constitute grounds for sanctions against the offending party, attorney, or both.

Finally, considering the court's rulings herein, the court hereby **vacates** the trial date and all pretrial deadlines. After consultation with the parties, the court will issue its final and Sixth Scheduling Order.

**It is so ordered** this 5th day of August, 2026.

Sam A. Lindsay
United States District Judge